IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | Criminal No. 15-87 |
| | ) | Judge Nora Barry Fischer |
| CHRISTOPHER BRADLEY-BEY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

AND NOW, this 13th day of November, 2015, upon consideration of Defendant Christopher Bradley-Bey's Motion for Review of Detention Order (Docket No. [674]), the Government's Opposition thereto (Docket No. [729]) and after conducting a *de novo* review of the detention order issued by Chief United States Magistrate Judge Maureen P. Kelly on May 27, 2015, (Docket No. [308]), including a review of the evidence presented to Chief Magistrate Judge Kelly during the detention hearing held on May 27, 2015, consisting of the Bond Report prepared by Pretrial Services, the Affidavit in Support of Application for Search and Seizure Warrants by Michael Johns, Special Agent, Drug Enforcement Administration dated May 19, 2015, (Docket No. 729-1), the reports of investigation detailing the searches and seizures of evidence from 57 Climax Avenue and 190 and 192 Boggs Avenue, (Docket Nos. 729-2, 729-3), and the transcript of the proceedings before Chief Magistrate Judge Kelly on May 27, 2015, (Docket No. 765), during which the Government presented the testimony of Sergeant Charles Scott Lukitsch and defense counsel proffered certain facts supporting Bradley-Bey's request for bond, presented brief testimony of his mother, and supporting character letters which were summarized by Chief Magistrate Judge Kelly in her findings,

IT IS HEREBY ORDERED that Bradley-Bey's Motion [674] is DENIED. In so holding, the Court makes the following findings:

1. Bradley-Bey's request for an evidentiary hearing before this Court is denied because the evidentiary record as to the issue of pretrial detention was fully developed before Chief Magistrate Judge Kelly, *see United States v. Delker*, 757 F.2d 1390 (3d Cir. 1985), and "[t]his court may make its independent determination" on the issue of pretrial detention "based solely upon the evidence introduced at the prior hearing." *United States v. Burgess*, 2008 WL 2038148 at *2 (W.D. Pa. Jul. 8, 2009) (McVerry, J.) (quoting *United States v. Farris*, 2008 WL 1944141, at * 7 (W.D. Pa. 2008)). Further, the additional facts that have been presented by Bradley-Bey at this stage of the proceedings consist only of two certificates of achievement from the Northeast Ohio Correctional Center indicating that he completed two courses while in presentence custody, i.e., a forty (40) hour substance abuse program; and a forty (40) hour self-improvement program with instruction on motivation, thinking errors, anger management, communication skills and parenting classes. (Docket Nos. 674-1; 674-2). Beyond these certificates, which this Court will consider in its evaluation of the present Motion, Bradley-Bey has not proffered any additional evidence which was not presented to Chief Magistrate Judge Kelly and would support his requested release on bond such that a hearing is not necessary.

2. This Court agrees with Chief Magistrate Judge Kelly's determination that there is probable cause to believe that Bradley-Bey has committed the offenses charged in the Indictment, i.e., at Count One, conspiracy to possess with intent to distribute and

distribute one kilogram or more of heroin from in and around January 2014 to in or around April 2015, contrary to the provisions of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(i) and in violation of 21 U.S.C. § 846; and at Count Fifteen, brandishing a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(ii), (Docket No. 3), based on the grand jury's return of same. *See United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986) ("an indictment is a sufficient substitute for a preliminary hearing to establish probable cause."); *see also United States v. Gibson*, 481 F. Supp. 2d 419, 422 (W.D. Pa. 2007) (citing *Suppa*). The statutory minimum and maximum penalties for Count One is a sentence of not less than ten years' imprisonment and up to a term of life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A)(i). Bradley-Bey is also subject to a mandatory minimum sentence of eighty-four months' (or 7 years) imprisonment at Count Fifteen which must be served consecutively to any sentence imposed at Count One. *See* 18 U.S.C. § 924(c)(1)(A)(ii). Therefore, pursuant to 18 U.S.C. § 3142(e)(3), a rebuttable presumption has been established that "no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community." 18 U.S.C. § 3142(e)(3).

3. The Court further agrees with Chief Magistrate Judge Kelly's conclusion that the evidence presented by Bradley-Bey was insufficient to meet his burden to rebut the applicable presumption that no conditions will reasonably assure his appearance and the safety of the community, as is explained below. *See United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986) (to rebut the presumption "[t]he defendant must produce

3

some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community."). In addition, this Court concludes that even if Bradley-Bey had met his evidentiary burden to rebut the applicable presumption, the Government has presented clear and convincing evidence that pretrial detention was and is appropriately ordered in this case. *See United States v. Gibson*, 481 F. Supp. 2d 419 (W.D. Pa. 2007) (quoting 18 U.S.C. § 3142(f)) ("If the presumption is rebutted, the facts employed to support detention must 'be supported by clear and convincing evidence.'"). In reaching these decisions, the Court has conducted an independent examination of the record evidence and balanced the four factors set forth under 18 U.S.C. § 3142(g), i.e.,

    a.    The nature and circumstances of the offenses charged;

    b.    The weight of the evidence against the person;

    c.    The history and characteristics of the person; and,

    d.    The nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

This Court finds that, on balance, the evidence presented at the detention hearing, as supplemented before this Court, favors the Government on each of these cited factors.

4. First, Bradley-Bey has been indicted for two very serious offenses, the convictions for which may result in the imposition of mandatory minimum sentences totaling 17 years or 204 months' incarceration, (i.e., 120 months at Count 1 and a consecutive 84 months at Count 15), as noted above. (Docket Nos. 3, 4). *See* 21 U.S.C. § 841(b)(1)(A)(i) and 924(c)(1)(A)(ii). As such, this factor weighs against Bradley-

Bey.

5.  Second, the evidence presented by the Government at the detention hearing, including the Affidavit of Special Agent Johns and the testimony of Sergeant Lukitsch, appears to be strong regarding both the heroin conspiracy charge and the brandishing a firearm offense. (Docket Nos. 729-1, 765). While Bradley-Bey suggests that the confidential source providing information against him lacks veracity, eyewitness testimony from an individual that he or she purchased heroin directly from him on multiple occasions and observed him in possession of significant quantities of heroin may be sufficient to convict him of the conspiracy charge. *See United States v. Steptoe*, 126 F. App'x 47, n. 1 (3d Cir. 2005) (citing *United States v. Perez*, 280 F.3d 318, 344 (3d Cir. 2002)) ("The testimony of one uncorroborated witness is sufficient to convict."); *see also United States v. Maynard*, 586 F. App'x 56, 59 (3d Cir. 2015) (evidence of drug sales constitute strong evidence of his knowing participation in the conspiracy). According to law enforcement, Bradley-Bey operated as significant heroin distributor in the Beltzhoover area as part of the broader interstate heroin trafficking operations by the Gardenhire Organization and "Zhoove" gang members investigated by the Drug Enforcement Administration. *See United States v. Atkins*, Crim. No. 15-87, 2015 WL 4920831, at *1 (W.D. Pa. Aug. 18, 2015). "The investigative methods utilized by law enforcement included, among other things, Title III authorized interceptions; search warrants; visual surveillance; traffic stops and arrests of certain defendants; and controlled purchases of heroin from certain defendants." *Id.*

Among other things, Sergeant Lukitsch testified that this defendant's brother and codefendant, Gemere Bey, told law enforcement that 31 bricks of heroin found at 190 Boggston Street when search warrants were executed in May of 2015 belonged to the instant defendant. (Docket No. 765 at 96). Bradley-Bey was also present during a drug transaction between co-defendant Chris Brown and a confidential informant ("CS3") in March of 2015, as confirmed by video surveillance captured by a pole camera. (*Id.* at 18-21). Another confidential informant ("CS2") provided information to law enforcement officers that he was working for Bradley-Bey and his brother selling heroin during 2014 and had observed up to 400 bricks of heroin at Bradley-Bey's residence, 57 Climax Street, during the conspiracy. (*Id.* at 22). Special Agent Johns also reports in his Affidavit that this individual further advised that Bradley-Bey was earning approximately $1,500 per day selling heroin, and that Bradley-Bey had sold him bricks of heroin on 5 or 6 separate occasions. (Docket No. 729-1 at 59).

The search warrant executed in May of 2015 at Bradley-Bey's home did not result in the recovery of bricks of heroin, (unlike his brother's residence and adjoining property a few blocks away where 32 total bricks were found), but there was contraband seized from the property suggesting that distribution activities had taken place there recently including: empty stamp bags; miscellaneous drug paraphernalia, such as rubber bands and clear plastic baggies; white/brownish powder inside clear plastic baggies; and loose marijuana in mason jars. (Docket No. 729-2). As each brick of heroin weighs approximately 1 ½ to 2 grams of heroin and is sold at wholesale between $200 to $500 per brick, the Government's evidence, viewed

collectively, shows that Bradley-Bey was involved in heroin distribution activities around the one-kilogram level. (*See* Docket No. 729-1 at 17).

Bradley-Bey, along with his brother, Gemere, and co-defendant Holman Brown were all participants in a violent assault on CS2 in October of 2014 after they had accused him of stealing heroin and $15,000 cash from the basement of 57 Climax Street. (*Id.* at 59-62). The very graphic details of this incident are set forth on pages 59 through 62 of Special Agent Johns' Affidavit, which are incorporated herein. (*Id.*). Among other things, Bradley-Bey: threatened to kill CS2 if he had anything to do with the theft; put a plastic bag over CS2's head and hit and kicked him repeatedly; broke a lightbulb in a towel, wet it and then held the towel over his mouth until he could no longer breathe; put a loaded firearm in his mouth; and ordered CS2 to take off his clothes and threatened to cut off his penis with wire cutters that he was holding. (*Id.*).

Additionally, with respect to the firearm charge, a semiautomatic pistol was recovered from Bradley-Bey's vehicle parked outside his residence in May of 2015. (*Id.* at 33). He was also observed waiving a firearm many times as captured on the pole camera video. (*Id.*). Overall, while recognizing that Bradley-Bey is presumed innocent of the charged offenses, the weight of the evidence against him as presented by the Government to this point is strong and favors pretrial detention.

6. Third, with respect to his history and characteristics, Bradley-Bey has introduced character letters from friends and family as well as his mother's testimony supporting his request for release on bond. (Docket No. 765 at 64-69). His counsel also

7

proffered additional supporting facts at the hearing, without objection from the Government. (*Id.*). This evidence shows that Bradley-Bey is 22 years old, a high school graduate and had some employment working as a landscaper and previously in janitorial services. (*Id.*). His prior criminal history is not as significant as many other defendants charged with drug offenses who appear before this Court as his only convictions are for disorderly conduct and public drunkenness from a March 2014 incident, at which time more serious charges of resisting arrest and simple assault were dismissed. *See Bond Report*. He has also participated in the two forty (40) hour programs at the North East Ohio Correctional Center for which he has earned certificates, showing that he is willing to make some effort, albeit while incarcerated, to improve himself as a person. (Docket Nos. 674-1, 674-2). Given same, Defendant has presented "some evidence" of the potential for him to return to stable law-abiding life, if released. *See Carbone*, 793 F.2d at 560.

With that said, Bradley-Bey has suggested that he be released to his parents' home on 57 Climax Street and his parents have agreed to be custodians for him. (*See* Docket No. 765 at 76-78). However, as is noted above, the Government has countered with strong evidence that Bradley-Bey engaged in the instant criminal conspiracy while residing at the same house where he now seeks to be released and that significant quantities of narcotics were observed at that location. (Docket Nos. 765, 729-1). Further, the mere fact that a relative or other individual is willing to serve as a third party custodian for a defendant is not sufficient to justify release on such conditions but is among the factors to be considered when evaluating whether

8

release or detention is appropriate in a given case. *See United States v. Bratcher*, Crim. No. 14–28, 2014 WL 1371582 (W.D.Pa. Apr.8, 2014) (Conti, C.J.). Overall, this factor also weighs in favor of the Government.

7.     The evidence as to the fourth and final factor likewise favors pretrial detention in this case. *See* 18 U.S.C. § 3142(g)(4). As the Court held in codefendant Shawn Atkins' case:

> Drug trafficking certainly poses a substantial risk of harm to the community, particularly the trafficking of very dangerous and addictive drugs like heroin. *See United States v. Gibson*, 481 F. Supp. 2d 419, 423 (W.D. Pa. 2007) ("violence is not the only danger to the community this court must consider. The court must also consider the danger of trafficking in illicit drugs."); *see United States v. Yarbough*, No. 2:14–CR–270–11, 2014 WL 7343839, at *4 (W.D. Pa. Dec.23, 2014) (McVerry, J.) ("heroin trafficking represents a substantial danger to the community."). "Schedule I drugs, such as heroin, have 'a high potential for abuse,' 'no currently accepted medical use in treatment in the United States,' and 'a lack of accepted safety' even 'under medical supervision.'" *Burrage v. United States*, ⎯ U.S. ⎯, ⎯, 134 S.Ct. 881, 887, 187 L.Ed.2d 715 (2014) (quoting 21 U.S.C. § 812(b)(1)). Additionally, the Centers for Disease Control and Prevention have cautioned that the number of heroin-related overdose deaths has quadrupled in the past decade (between 2002 and 2013) and that such statistics demonstrate that heroin abuse has become an epidemic problem at the federal, state and local levels. *See Ctr's for Disease Control & Prevention, "Today's Heroin Epidemic: More people at risk, multiple drugs abused,"* (July 2015), *available at:* http://www.cdc.gov/vitalsigns/pdf/2015–07–vitalsigns.pdf (last visited 8/18/15).

*Atkins*, 2015 WL 4920831, at *7. Hence, the significant heroin trafficking in this case would be sufficient, by itself, to warrant pretrial detention.

In addition, the threats of deadly violence and acts of violence toward CS2, a prospective government witness, demonstrate that there is a significant risk of

additional threats and acts of violence toward this individual if Bradley-Bey is released. *See e.g. United States v. Williams*, 1998 WL 964209 (E.D. Pa. Nov. 4, 1998) (threats of violence warranted detention). Again, Bradley-Bey subjected CS2 to this brutal assault at a time when it was believed that he had stolen money and drugs but now that this individual has provided evidence to government agents resulting in an indictment being returned, the risk of violence toward this individual is much greater. (Docket No. 729-1 at 59-62). Finally, Bradley-Bey faces at least 17 years' incarceration, if convicted of both charges, such that there is a potential that he will seek to flee from prosecution, despite his family support and lack of prior instances of flight or failing to appear as required for court. *See United States v. Ewell*, Crim. No. 13–125, 2013 WL 4479029, at *3 (W.D. Pa. Aug.20, 2013) ("The potential for flight from prosecution is now greater as he has been charged with such a serious offense and faces very severe penalties, if convicted."). Therefore, this factor weighs convincingly in favor of the Government and against Bradley-Bey's position.

For all of these reasons,

IT IS HEREBY ORDERED that Defendant's Motion [674] is DENIED;

IT IS FURTHER ORDERED that Defendant shall remain detained in the custody of the Attorney General or a designated represented in confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody pending appeal;

IT IS FURTHER ORDERED that Defendant must be afforded a reasonable opportunity

to consult privately with defense counsel; and

      FINALLY, IT IS ORDERED that on order of a United States Court or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to the United States Marshal for a court appearance.

                                              *s/ Nora Barry Fischer*
                                              Nora Barry Fischer
                                              United States District Judge

cc/ecf:  All Counsel of Record

        Christopher Bradley-Bey (USMS # 35698068) c/o James Robinson, Esquire

        Pretrial Services/Probation Office

        U.S. Marshal